IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 14-61319-wlh |
| MARCUS ARMOUR OLIVER AND CHUDNEY WILLIAMS OLIVER, | CHAPTER:  13 |
| Debtors. | JUDGE: WENDY L. HAGENAU |
| U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR RESIDENTIAL ASSET SECURITIES CORPORATION, HOME EQUITY MORTGAGE ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2007-KS2, | CONTESTED MATTER |
| Movant, | |
| v. | |
| MARCUS ARMOUR OLIVER AND CHUDNEY WILLIAMS OLIVER, Debtors NANCY J. WHALEY, Trustee, | |
| Respondent(s). | |

## NOTICE OF HEARING

**PLEASE TAKE NOTICE** that the Movant named above has filed a Motion for Relief from the Automatic Stay and related papers with the Court seeking an Order Granting Relief from the Automatic Stay.

**PLEASE TAKE FURTHER NOTICE** that the Court will hold a hearing on the Motion in Courtroom 1403, United States Courthouse, 75 Ted Turner Drive SW, Atlanta, GA 30303, at 2:30 P.M., on January 25, 2017.

Your rights may be affected by the Court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the Court to grant the relief sought in these pleadings, or if you want the Court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how, and on whom (including addresses) you served the response. Mail or deliver your response so that it is received by the

Clerk at least two business days before the hearing. The address of the Clerk's Office is: Clerk, U.S. Bankruptcy Court, 75 Ted Turner Drive SW, Room 1340, Atlanta, GA 30303. You must also mail a copy of your response to the undersigned at the address stated below.

If a hearing on the motion for relief from the automatic stay cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty days of filing the motion and agrees to a hearing on the earliest possible date. If a final decision cannot be rendered by the Court within sixty (60) days of the date of the request, Movant waives the requirement that a final decision be issued within that period. Movant consents to the automatic stay remaining in effect until the Court orders otherwise.

/s/ *Bryce Noel*
Bryce Noel, Bar No.: 620796
Attorney for Movant
Aldridge Pite, LLP
Fifteen Piedmont Center
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (888) 873-6147
Email: BNoel@aldridgepite.com

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 14-61319-wlh |
| MARCUS ARMOUR OLIVER AND CHUDNEY WILLIAMS OLIVER, | CHAPTER: 13 |
| Debtors. | JUDGE: WENDY L. HAGENAU |
| U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR RESIDENTIAL ASSET SECURITIES CORPORATION, HOME EQUITY MORTGAGE ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2007-KS2, | CONTESTED MATTER |
| Movant, | |
| v. | |
| MARCUS ARMOUR OLIVER AND CHUDNEY WILLIAMS OLIVER, Debtors NANCY J. WHALEY, Trustee, | |
| Respondent(s). | |

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY

COMES NOW Movant named above and shows this Court the following:

1.      This Motion is made pursuant to Section 362(d) of the Bankruptcy Code for relief from the automatic stay for all purposes allowed by law and the contract between the parties, including, but not limited to, the right to foreclose on certain real property by a private power of sale contained in a certain Security Deed.

2.      Movant is the holder or the servicer of a loan secured by certain real property in which the Debtors have an interest. Said real property is security for a Promissory Note, and is commonly known as 2446 Ridgelake Drive, Villa Rica, Georgia 30180.

3.      There has been a default in mortgage payments which have come due since this case was filed. As of December 12, 2016, five (5) post petition payments have been missed.

4.      The total unpaid principal balance as of December 12, 2016, is $203,219.55 which includes a deferred principal balance amount of $71,350.00, and interest is due thereon in accordance with the Promissory Note.

5.      Because of the default and clear inability to make all required payments, Movant is not adequately protected.

6.      Because the Loan Documents so provide, Movant is entitled to reasonable attorney's fees.

7.      Movant requests that in the event the Motion is granted, the Trustee be ordered to cease funding any balance of Movant's claim and that Fed. R. Bank. P. 3002.1 be held not to apply to Movant, its successors and/or assigns, as Movant's claim would not be provided for in the Plan pursuant to Section 1322(b)(5) of the Code.

8.      Movant requests that the provisions of Fed. R. Bankr. P 4001(a)(3) be waived.

9.      Ocwen Loan Servicing, LLC services the underlying mortgage loan and note for the property referenced in this Motion for Relief for U.S. Bank National Association, as Trustee for Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2007-KS2, and is entitled to proceed accordingly.  Should the Automatic Stay be lifted and/or set aside by Order of this Court or if this case is dismissed or if the debtor obtains a discharge and a foreclosure action is commenced or recommenced, said foreclosure action will be conducted in the name of U.S. Bank National Association, as Trustee for Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2007-KS2. U.S. Bank National Association, as Trustee for

Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2007-KS2 has the right to foreclose because it is the original mortgagee or beneficiary or assignee of the security instrument for the referenced loan.  U.S. Bank National Association, as Trustee for Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2007-KS2, directly or through an agent has possession of the promissory note and the promissory note is either made payable to U.S. Bank National Association, as Trustee for Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2007-KS2, or has been duly endorsed.

10.    Movant requests that upon entry of an Order Granting this Motion and Lifting the Stay, the Chapter 13 Trustee make no further payments on account of Movant's secured claim, that the secured portion of Movant's claim be deemed withdrawn without prejudice to Movant's right to file  an amended unsecured claim for any deficiency and that absent a stipulation or order to the contrary, Movant shall return to the Chapter 13 Trustee any payments received from the Trustee on account of Movant's secured claim, after entry of an Order Granting this Motion.

11.    Movant requests that it be permitted to contact the Debtors or Debtors' Counsel, as appropriate, through its agents, servicers and representatives for the purpose of engaging in discussions and consideration for possible loss mitigation options, solutions and resolutions, as appropriate with regard to the underlying Security Deed and Note, including, but not limited to loan modification or other loss mitigation alternatives.

WHEREFORE, Movant prays for an Order lifting the automatic stay, authorizing it to proceed with the exercise of its private power of sale and to foreclosure under its Loan Documents and appropriate state statutes, and for an award of reasonable attorney's fees. Movant also prays that Fed. R. Bankr. P. 3002.1 be held not applicable in accordance with the

request hereinbefore, that Fed. R. Bankr. P. 4001(a)(3) be waived. Movant also prays that the Chapter 13 Trustee make no further payments on account of Movant's secured claim, that Movant be permitted to contact the Debtors or Debtors' Counsel, as appropriate, through its agents, servicers and representatives for the purpose of engaging in discussions and consideration for possible loss mitigation options, and for such other and further relief as is just and equitable.

/s/ *Bryce Noel*
Bryce Noel, Bar No.: 620796
Attorney for Movant
Aldridge Pite, LLP
Fifteen Piedmont Center
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (888) 873-6147
Email: BNoel@aldridgepite.com

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 14-61319-wlh |
| MARCUS ARMOUR OLIVER and CHUDNEY WILLIAMS OLIVER, | CHAPTER:  13 |
| Debtors. | JUDGE:  WENDY L. HAGENAU |
| U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR RESIDENTIAL ASSET SECURITIES CORPORATION, HOME EQUITY MORTGAGE ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2007-KS2, | |
| Movant, v. | |
| MARCUS ARMOUR OLIVER and CHUDNEY WILLIAMS OLIVER, Debtors NANCY J. WHALEY, Trustee, | |
| Respondent(s). | |

### DECLARATION IN SUPPORT OF
### MOTION FOR RELIEF FROM AUTOMATIC STAY

I, _____Shilundra Lidell_____ , declare under penalty of perjury as follows:

1.      I am employed as a ___Contract Management Coordinator___ of Ocwen Loan Servicing, LLC and am authorized to sign this declaration on behalf of Ocwen Loan Servicing, LLC, as servicer for U.S. Bank National Association, as Trustee for Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2007-KS2 (the "Movant"). This declaration is provided in support of the Motion for Relief from Stay (the "Motion") filed.

2.      I make this declaration based upon my review of the records with regard to this underlying loan transaction, which are kept in the ordinary course of business of Ocwen Loan

Servicing, LLC. As part of my job responsibilities for Ocwen Loan Servicing, LLC, I have personal knowledge of and am familiar with the types of records maintained by Ocwen Loan Servicing, LLC in connection with the loan that is the subject of the Motion (the "Loan") and the procedures for creating those types of records. I have access to and have reviewed the books, records and files of Ocwen Loan Servicing, LLC that pertain to the Loan and extensions of credit given to Debtors concerning the property securing such Loan.

3.      The information in this declaration is taken from Ocwen Loan Servicing, LLC's business records regarding the Loan. The records are: (a) made at or near the time of the occurrence of the matters recorded by persons with personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge; (b) kept in the course of Ocwen Loan Servicing, LLC's regularly conducted business activities; and (c) it is the regular practice of Ocwen Loan Servicing, LLC to make such records.

4.      The Debtors aka Chudney Oliver have executed and delivered or are otherwise obligated with respect to that certain promissory note referenced in the Motion (the "Note"). The Debtors aka Chudney Oliver have executed and delivered or are otherwise obligated with respect to that Security Deed referenced in the Motion (the "Security Deed"). Pursuant to that certain Security Deed referenced in the Motion (the "Security Deed"), all obligations of the Debtors under and with respect to the Note and the Security Deed are secured by the property referenced in the Motion.

5.      As of December 12, 2016, there are one or more defaults in paying Debtors post-petition amounts due with respect to the Note.

6.      As of December 12, 2016, the total unpaid principal balance is $203,219.55 which includes the unpaid principal balance of $131,869.55 and deferred principal balance of $71,350.00.

7.     The following chart sets forth those post-petition payments, due pursuant to the terms of the Note, that have been missed by the Debtors as of December 12, 2016:

| Number of Missed Payments | From | To | Monthly Missed Principal and Interest | Monthly Missed Escrow (if applicable) | Monthly Payment Amount | Total Amounts Missed |
|---|---|---|---|---|---|---|
| 1 | 8/1/2016 | 8/1/2016 | $842.85 | $539.42 | $1,382.27 | $1,382.27 |
| 4 | 9/1/2016 | 12/1/2016 | $842.85 | $431.78 | $1,274.63 | $5,098.52 |
| Less post-petition partial payments (suspense balance): | | | | | | ($349.02) |

Total:  $6,131.77

8.     As of December 12, 2016, the total post-petition arrearage/delinquency is $6,131.77 consisting of (i) the foregoing total of missed post-petition payments in the amount of $6,131.77 plus (ii) the following post-petition fees:[1]

---

[1]  The total of missed postpetition payments for this escrow loan include any missed escrow payments. Such missed escrow payments include amounts assessed for taxes and insurance and any previously assessed escrow shortage amount (if applicable). To avoid duplication, postpetition advances (if any) made for insurance, real estate taxes, or similar charges are not listed separately to the extent such advances would have been paid from the missed escrow payments. As part of the next annual RESPA analysis, movant will determine whether the escrow payments assessed to the debtor (including the missed escrow payments) result in a projected escrow shortage or overage. All rights are hereby reserved to assert or request any escrow amounts in accordance with RESPA and the total postpetition arrearage/delinquency is qualified accordingly.

| Description | Amount |
|:---:|:---:|
| N/A | N/A |

9.    Attached as Exhibit A is a post-petition payment history.

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on ___30___ day of ___Dec.___ _2016_.

_____
Signature

_Shilundra Lidell_
Name
Contract Management Coordinator
_____
Title

State of FLORIDA
County of PALM BEACH

The foregoing instrument was acknowledge and sworn before me this 30th day of _Dec_, 2016, by ___Shilundra Lidell___ as a _Contract Management Coordinator_ of Ocwen Loan Servicing, LLC, who is _personally known to me_ or who has produced _____ as identification.

_____
Notary Public – State of Florida
_Javier Rivera_
Printed Name
My commission expires: _4/28/2020_



Notary Public State of Florida
Javier Rivera
My Commission FF 987299
Expires 04/28/2020

| Name: | Marcus Armour Oliver | | | | | Completed By: | Peddanna |
|---|---|---|---|---|---|---|---|
| BK Case Number: | 14-61319 | | | | | | |
| Filing Date: | 6/9/2014 | | | | | | |
| Post First Due: | 7/1/2014 | | | | | | |
| Post-Petition Due | Date Received | Amount Received | Amount Applied | Suspense Application | | Suspense Balance | Comments |
| 7/1/2014 | 7/23/2014 | $ 1,559.00 | $ 1,382.27 | $ 176.73 | | $ 176.73 | |
| 8/1/2014 | 8/29/2014 | $ 1,559.55 | $ 1,382.27 | $ 177.28 | | $ 354.01 | |
| 9/1/2014 | 9/30/2014 | $ 1,559.55 | $ 1,382.27 | $ 177.28 | | $ 531.29 | |
| | 10/24/2014 | $ 3.78 | | $ 3.78 | | $ 535.07 | |
| 10/1/2014 | 10/30/2014 | $ 1,382.27 | $ 1,382.27 | $ - | | $ 535.07 | |
| 11/1/2014 | 12/5/2014 | $ 1,382.27 | $ 1,382.27 | $ - | | $ 535.07 | |
| 12/1/2014 | 1/30/2015 | $ 1,382.27 | $ 1,382.27 | $ - | | $ 535.07 | |
| 1/1/2015 | 3/2/2015 | $ 1,382.27 | $ 1,382.27 | $ - | | $ 535.07 | |
| 2/1/2015 | 4/2/2015 | $ 1,382.27 | $ 1,382.27 | $ - | | $ 535.07 | |
| 3/1/2015 | 5/8/2015 | $ 1,382.27 | $ 1,382.27 | $ - | | $ 535.07 | |
| 4/1/2015 | 6/30/2015 | $ 1,382.27 | $ 1,382.27 | $ - | | $ 535.07 | |
| 5/1/2015 | 7/31/2015 | $ 1,390.00 | $ 1,382.27 | $ 7.73 | | $ 542.80 | |
| 6/1/2015 | 9/1/2015 | $ 1,400.00 | $ 1,382.27 | $ 17.73 | | $ 560.53 | |
| 7/1/2015 | 10/2/2015 | $ 1,400.00 | $ 1,382.27 | $ 17.73 | | $ 578.26 | |
| 8/1/2015 | 11/6/2015 | $ 1,400.00 | $ 1,382.27 | $ 17.73 | | $ 595.99 | |
| 9/1/2015 | 12/31/2015 | $ 1,382.27 | $ 1,382.27 | $ - | | $ 595.99 | |
| | 1/15/2016 | $ 531.29 | | $ 531.29 | | $ 1,127.28 | |
| 10/1/2015 | 2/2/2016 | $ 1,388.00 | $ 1,382.27 | $ 5.73 | | $ 1,133.01 | |
| 11/1/2015 | 2/17/2016 | $ 780.55 | $ 1,382.27 | $ (601.72) | | $ 531.29 | |
| 12/1/2015 | 3/1/2016 | $ 1,388.69 | $ 1,382.27 | $ 6.42 | | $ 537.71 | |
| 1/1/2016 | 4/1/2016 | $ 1,500.88 | $ 1,382.27 | $ 118.61 | | $ 656.32 | |
| 2/1/2016 | 5/3/2016 | $ 1,400.00 | $ 1,382.27 | $ 17.73 | | $ 674.05 | |
| 3/1/2016 | 6/6/2016 | $ 1,400.00 | $ 1,382.27 | $ 17.73 | | $ 691.78 | |
| 4/1/2016 | 7/25/2016 | $ 1,000.00 | $ 1,382.27 | $ (382.27) | | $ 309.51 | |
| 5/1/2016 | 8/23/2016 | $ 1,386.00 | $ 1,382.27 | $ 3.73 | | $ 313.24 | |
| | 10/3/2016 | $ 700.00 | | $ 700.00 | | $ 1,013.24 | |
| 6/1/2016 | 10/3/2016 | $ 850.00 | $ 1,382.27 | $ (532.27) | | $ 480.97 | |
| | 10/20/2016 | $ 50.32 | | $ 50.32 | | $ 531.29 | |
| 7/1/2016 | 11/10/2016 | $ 1,200.00 | $ 1,382.27 | $ (182.27) | | $ 349.02 | |

DECLARATION
EXHIBIT A

| Name: | Marcus Armour Oliver | | | | | | |
|---|---|---|---|---|---|---|---|
| BK Case Number: | 14-61319 | | | | | | |
| Filing Date: | 6/9/2014 | | | | | | |
| Completed by: | Peddanna | | | | | | |
| Due Date | Total Payment | | Principal | Interest | Escrow | Optional Products | NOPC Filed Date |
| 8/1/2016 | $ | 1,382.27 | $ 312.15 | $ 530.70 | $ 539.42 | | |
| 9/1/2016 | $ | 1,274.63 | $ 313.42 | $ 529.43 | $ 431.78 | | 7/18/2016 |
| 10/1/2016 | $ | 1,274.63 | $ 314.69 | $ 528.16 | $ 431.78 | | |
| 11/1/2016 | $ | 1,274.63 | $ 315.97 | $ 526.88 | $ 431.78 | | |
| 12/1/2016 | $ | 1,274.63 | $ 317.25 | $ 525.60 | $ 431.78 | | |
| Total Due | $ | 6,480.79 | $ 1,573.48 | $ 2,640.77 | $ 2,266.54 | $         - | |

DECLARATION
EXHIBIT A

**FIXED/ADJUSTABLE RATE NOTE**
(LIBOR Index - Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

November 08, 2006                ATLANTA                    GA

[Date]                          [City]                   [State]


2446 Ridgelake Drive, Villa Rica, GA 30180

[Property Address]

**1. BORROWER'S PROMISE TO PAY**
   In return for a loan that I have received, I promise to pay U.S. $ 211,200.00              (this amount is called "Principal"), plus interest, to the order of the Lender.  The Lender is
SouthStar Funding, LLC
I will make all payments under this Note in the form of cash, check or money order.
   I understand that the Lender may transfer this Note.  The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."


**2. INTEREST**
   Interest will be charged on unpaid principal until the full amount of Principal has been paid.  I will pay interest at a yearly rate of   9.800      %.   The interest rate I will pay may change in accordance with Section 4 of this Note.
   The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.


**3. PAYMENTS**
   (A) Time and Place of Payments
   Beginning on January 01, 2007                              and on the first day of every month thereafter
until December 01, 2011                    , I will pay only the interest on the unpaid principal balance of this Note.  Thereafter, I will pay principal and interest by making payments every month as provided below.
   I will make my monthly payments of principal and interest on the first day of each month beginning
January 01, 2012                      .  I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.
   My monthly payments will be applied to interest before principal. If, on December 01, 2036       , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
   I will make my monthly payments at        Star Mortgage Services, PO Box 200010, Kennesaw, GA 30156


                                     or at a different place if required by the Note Holder.

   (B) Amount of My Initial Monthly Payments
   Each of my initial monthly payments will be in the amount of U.S. $  1,724.80

                                                        .  This amount may change.
   (C) Monthly Payment Change
   Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay.  The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

   (D) Withholding
   If I am a nonresident client, I understand that all payments due hereunder shall be paid without reduction for any taxes, deductions or withholding of any nature.  If such tax, deduction or withholding is required by any law to be made from any payment to the Note Holder, I shall continue to pay this Note in accordance with the terms of hereof, such that the Note Holder will receive such amount as it would have received had no such tax, deduction or withholding been required.

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
   (A) Change Dates
   The interest rate I will pay may change on December 01, 2008                     and on that day every sixth month thereafter.  Each date on which my interest rate could change is called a "Change Date".

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for 6-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the date forty-five (45) days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding
Six and 200/1000's                                    Percentage point(s) ( 6.200          %) to the Current Index.  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%).  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

(i) Interest-Only Period.  The "interest-only period" is the period from the date of this Note through December 01, 2011                .  For the interest-only period, after calculating my new interest rate as provided above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to pay the interest which accrues on the unpaid principal of my loan.  The result of this calculation will be the new amount of my monthly payment.

(ii) Amortization Period.  The "amortization period" is the period after the interest-only period.  For the amortization period, after calculating my new interest rate as provided above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments.  The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than  12.800              %
or less than   9.800              %.  Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than  One and 0/100's                        percentage point(s)(1.000          %) from the rate of interest I have been paying for the preceding       6        months.  My interest rate will never be greater than  15.800          %.  My interest rate will never be less than  9.800  %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date.  I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Change**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change.  The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due.  A payment of Principal only is known as "Prepayment."  When I make a Prepayment, I will tell the Note Holder in writing that I am doing so.  I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge.  The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note.  However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal of the Note.  If I make a partial Prepayment, there will be no changes in the due dates of monthly payments unless the Note Holder agrees in writing to those changes.  My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment.  However, any reduction due to my partial Prepayment may offset by an interest rate increase.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then; (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceed permitted limits will be refunded to me.  The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me.  If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000% of installment due. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICE

Unless applicable law requires a different method, any notice that must be give to me under this Note will be given by delivering it or my mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVER

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

The Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, the Mortgage 100 Pledge Agreement for Securities Account, if applicable, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. The Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law

Two Year Interest Only LIBOR Note
SSF1067N / SSF1067N(092004.Rev(00))
SSF1067N3.uff

Page 3 of 4

Initials

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on borrower.

12. OUR COPY

We/I acknowledge receipt of a signed copy of this Note.

CAUTION-IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS NOTE BEFORE SIGNING.

WITNESS the hand(s) and seal(s) of the undersigned.

_____(Seal)          _____(Seal)
Chudney Oliver          Borrower          Marcus Armour Oliver          Borrower

_____(Seal)          _____(Seal)
                        Borrower                                  Borrower

_____(Seal)          _____(Seal)
                        Borrower                                  Borrower

## ALLONGE TO NOTE

Note Date: November 08, 2006

Borrower Name(s):Chudney Oliver
                 Marcus Armour Oliver

Borrower Address: 2446 Ridgelake Drive
                  Villa Rica, GA 30180

Loan Amount:  211,200.00

Lender Name:  SouthStar Funding, LLC

Pay to the Order of Without Recourse:  **RESIDENTIAL FUNDING COMPANY, LLC**

By:
   SouthStar Funding, LLC

Lynn B. Leonard
Assistant Vice President

SSF1020.UFF(4/11/03)

PAY TO THE ORDER OF
U.S. Bank National Association as Trustee
WITHOUT RECOURSE
Residential Funding Company, LLC    100190830000072874
By    Judy Faber
     Judy Faber, Vice President

## ALLONGE TO NOTE

Note Date: November 08, 2006

███████████████

Borrower Name(s):Chudney Oliver
Marcus Armour Oliver

Borrower Address: 2446 Ridgelake Drive
Villa Rica, GA 30180

Loan Amount:   211,200.00

Lender Name:  SouthStar Funding, LLC

Pay to the Order of Without Recourse:   **RESIDENTIAL FUNDING COMPANY, LLC**

By: _____
SouthStar Funding, LLC

Lynn B. Leonard
Assistant Vice President

██████████████

SSF1020.UFF(4/11/03)

PAY TO THE ORDER OF
U.S. Bank National Association as Trustee
WITHOUT RECOURSE
Residential Funding Company, LLC    100190830000072874

By _____
Judy Faber, Vice President

## ALLONGE TO NOTE

Note Date: November 08, 2006

Borrower Name(s):Chudney Oliver
             Marcus Armour Oliver

Borrower Address: 2446 Ridgelake Drive
             Villa Rica, GA 30180

Loan Amount:  211,200.00

Lender Name:  SouthStar Funding, LLC

Pay to the Order of Without Recourse:   **RESIDENTIAL FUNDING COMPANY, LLC**

By:
SouthStar Funding, LLC

Lynn B. Leonard
Assistant Vice President

SSF1020.UFF(4/11/03)

PAY TO THE ORDER OF
U.S. Bank National Association as Trustee
WITHOUT RECOURSE
Residential Funding Company, LLC   100190830000072874

By   Judy Faber
   Judy Faber, Vice President

## ALLONGE

This endorsement is a permanent part of the Note dated 11/08/2006 in the amount of $211,200.00

**BORROWER:**          CHUDNEY OLIVER
                       MARCUS ARMOUR OLIVER

**PROPERTY:**          2446 RIDGELAKE DRIVE
                       VILLA RICA  GA  30180

**PAY TO THE ORDER OF:**
U.S. Bank National Association, as Trustee for Residential Asset Securities Corporation, Home Equity
Mortgage Asset-Backed Pass-Through Certificates, Series 2007-KS2

**WITHOUT RECOURSE**
U.S. Bank National Association, as Trustee by Ocwen Loan Servicing, LLC, its Attorney in Fact

**Signor**: MICLA THURM
**Title**:  AUTHORIZED SIGNER

## PREPAYMENT PENALTY ADDENDUM TO NOTE

This Prepayment Penalty Addendum to Note  ("Addendum") is made this 8th day of November, 2006 by the undersigned Borrower(s)("Borrower") in favor of SouthStar Funding, LLC ("Lender").

Whereas, Borrower simultaneously herewith executed and delivered a promissory note ("Note") to Lender; and

Whereas, Borrower and Lender wish to revise the Note to provide for a prepayment penalty.

In consideration for the granting of the loan evidenced by the Note, Borrower agrees as follows:

1.   In addition to the covenants and agreements made in the Note, Borrower further covenants and agrees that the Section in the Note titled "Borrower's Right to Prepay" or "Borrower's Payments Before They Are Due" is amended so that Borrower agrees to pay a prepayment penalty as follows:

I/We have the right to make payments of principal at any time before they are due. A prepayment of all of the unpaid principal balance is known as a "Full Prepayment." A prepayment of only part of the unpaid principal is known as a "Partial Prepayment." When I/we make a prepayment, I/we will tell the Note Holder in writing that I/we am/are doing so. If, within the first 12 months following the date of the Note and the Security Instrument I/we make a Full Prepayment or Partial  Prepayment(s), I/we will at the same time pay to the Note Holder a prepayment charge.

The prepayment charge will be equal to 1 % of any amount prepaid on the amount of any prepayment that when added to all other amounts prepaid during the twelve (12) month period preceding the date of any prepayment, exceeds twenty percent (20%) of the original principal amount of the Note.

2.   If a law which applies to this Addendum and which sets maximum charges is finally interpreted so that the charges imposed or collected in connection with this Addendum and the Related Documents exceeds the permitted limits, then any such charge shall be reduced as necessary to remain within the limits of the law.  If any provision of this Addendum is held to be in violation of any law, then such provision shall be given full force and effect to the fullest extent permitted by law and shall be replaced with language that is enforceable and which shall have, as closely as possible, the same meaning as the severed language, and the remainder of this Addendum shall be construed as if such unenforceable provision were not contained in this Addendum, and the rights and obligations of Borrower and Lender under the remainder of this Addendum shall continue in full force and effect.

3.   The Note is not modified except as amended by this Addendum.  All terms and conditions of the Note not in conflict with this Addendum shall remain in full force and effect. To the extent that the provisions of this Addendum are inconsistent with the provisions of the Note, the provisions of the Addendum shall prevail over and supersede any such inconsistent provisions of the Note.

By signing below, Borrower accepts and agrees to the terms and covenants contained in this Addendum.

**IN WITNESS WHEREOF**, the Borrower(s) has/have executed under Seal this Addendum on this _____ 8th_ day of  November, 2006_____.

_____ (SEAL)
Chudney Oliver

_____ (SEAL)
Marcus Armour Oliver

_____ (SEAL)

_____ (SEAL)

*[Sign Original Only]*

**Original Note Addendum to be returned with closing package.**

Prepayment Penalty Addendum to Note (Rev. 0/4-22-05)
PPPAdd.UFF

Doc ID: 002056400023 Type: GLR
Filed: 07/25/2007 at 10:55:00 AM
Fee Amt: $1,043.82 Page 1 of 23
Intangible Tax: $989.82
Douglas County Georgia
Cindy Chaffin Clerk Superior Court
BK 2597 PG 309-331

Return To:

SouthStar Funding, LLC
400 Northridge Road
Suite 1000
Atlanta, GA 30350

Prepared By:

Natasha Graham
400 Northridge Road
Suite 1000
Atlanta, GA 30350

Morris | Hardwick | Schneider
attorneys at law
3130 Golf Ridge Boulevard
Suite 100
Douglasville, Georgia 30135

[Space Above This Line For Recording Data]

## SECURITY DEED
MIN

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated November 08, 2006
together with all Riders to this document.
**(B) "Borrower"** is

Chudney Oliver, Marcus Armour Oliver Joint Tenants

Borrower is the grantor under this Security Instrument.
**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the grantee under
this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an
address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

GEORGIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS        Form 3011 1/01

-6A(GA) (0005).02
Page 1 of 14                                    Initials:
VMP MORTGAGE FORMS - (800)521-4291

EXHIBIT 2

BK    PG
2597 0310

(D) **"Lender"** is
SouthStar Funding, LLC
Lender is a Limited Liability Company
organized and existing under the laws of Delaware
Lender's address is
400 Northridge Road, Suite 1000, Atlanta, GA 30350
(E) **"Note"** means the promissory note signed by Borrower and dated November 08, 2006
The Note states that Borrower owes Lender
Two Hundred Eleven  Thousand Two Hundred   Dollars and 00/100's Cents                  Dollars
(U.S. $211,200.00                      ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than December 01, 2036
(F) **"Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [X] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [X] Other(s) [specify] |

GA Waiver of Borrower's Rights
Prepayment Penalty Option Rider

(I) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) **"Escrow Items"** means those items that are described in Section 3.
(M) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used

-6A(GA) (0005).02                       Page 2 of 14                Initials:               Form 3011  1/01

EXHIBIT 2

BK    PG
2597  0311

in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS, with power of sale, the following described property located in the

County                                          of                  ▓▓▓▓ Douglas          :
[Type of Recording Jurisdiction]                               [Name of Recording Jurisdiction]

See Exhibit A

Parcel ID Number: 01780250093                              which currently has the address of

2446 Ridgelake Drive                                                                 [Street]

Villa Rica                                              [City] , Georgia  30180          [Zip Code]

("Property Address"):

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

██████████████████

VMP-6A(GA) (0005).02                        Page 3 of 14        Initials: ███        Form 3011  1/01

EXHIBIT 2

BK    PG
2597 0312

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future. but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

 -6A(GA) (0005).02                 Page 4 of 14          Initials:            Form 3011  1/01

EXHIBIT 2

BK    PG
2597 0318

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

 
EXHIBIT 2

BK    PG

**2597  0314**

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with



**EXHIBIT 2**

BK    PG
2597  0315

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying



-6A(GA) (0005).02

Page 7 of 14    Initials: _____    Form 3011  1/01

EXHIBIT 2

BK    PG
2597 0316

reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

-6A(GA) (0005).02    Page 8 of 14    Initials [signature]    Form 3011 1/01

**EXHIBIT 2**

2597  0317

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

-6A(GA) (0005).02                    Page 9 of 14                    Initials: _____                    Form 3011  1/01

EXHIBIT 2

BK    PG
2597  0318

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.





EXHIBIT 2

BK        PG
2597  0319

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

---

-6A(GA) (0005).02          Page 11 of 14          Initials: _____          Form 3011  1/01

EXHIBIT 2

**2597 0320**

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

 
**EXHIBIT 2**

BK    PG

**2597 0321**

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.

If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waiver of Homestead.** Borrower waives all rights of homestead exemption in the Property.

25. **Assumption Not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

26. **Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.



6A(GA) (0005).02

Page 13 of 14

Initials 

Form 3011 1/01

**EXHIBIT 2**

BK      PG
2597 0322

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

_____ (Seal)          _____ (Seal)
Chudney Oliver                -Borrower        Marcus Armour Oliver            -Borrower

_____ (Seal)          _____ (Seal)
                              -Borrower                                       -Borrower

_____ (Seal)          _____ (Seal)
                              -Borrower                                       -Borrower

_____ (Seal)          _____ (Seal)
                              -Borrower                                       -Borrower

STATE OF GEORGIA,                      Douglas            County ss:
Signed, sealed and delivered in the presence of:

_____
Unofficial Witness

_____          _____
Notary Public,                                    County
State of Georgia

-6A(GA) (0005).02          Page 14 of 14          Form 3011  1/01

EXHIBIT 2

BK     PG
2597  0323

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 8th                    day of
November, 2006                                        , and is incorporated into and shall be
deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the
"Security Instrument") of the same date, given by the undersigned (the "Borrower") to
secure Borrower's Note to
SouthStar Funding, LLC

(the "Lender") of the same date and covering the Property described in the Security
Instrument and located at:
2446 Ridgelake Drive, Villa Rica, GA 30180

[Property Address]
The Property includes, but is not limited to, a parcel of land improved with a dwelling,
together with other such parcels and certain common areas and facilities, as described in
Declaration of Covenants, Conditions, and Restrictions

(the "Declaration"). The Property is a part of a planned unit development known as
MIRROR LAKE

[Name of Planned Unit Development]
(the "PUD"). The Property also includes Borrower's interest in the homeowners association or
equivalent entity owning or managing the common areas and facilities of the PUD (the
"Owners Association") and the uses, benefits and proceeds of Borrower's interest.
    **PUD COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:
    **A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's
Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of
incorporation, trust instrument or any equivalent document which creates the Owners
Association; and (iii) any by-laws or other rules or regulations of the Owners Association.
Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the
Constituent Documents.

████████              ████████

**MULTISTATE PUD RIDER** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
**Form 3150 1/01**

VMP®-7R (0411)

Page 1 of 3                          Initials: _____
VMP Mortgage Solutions, Inc. (800)521-7291

*LNR1000*

EXHIBIT 2

BK    PG

2597 0324

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

VMP-7R (0411)                    Page 2 of 3                    Initials:            Form 3150 1/01

EXHIBIT 2

BK      PG

2597   0325

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_Chudney Oliver_ _____ (Seal)
Chudney Oliver                    -Borrower

_____ (Seal)
Marcus Armour Oliver              -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

VMP®-7R (0411)          Page 3 of 3          Form 3150 1/01

EXHIBIT 2

BK      PG
2597  0326

**FIXED/ADJUSTABLE RATE RIDER**
**(LIBOR Index - Rate Caps)**

THIS ADJUSTABLE RATE RIDER is made this   8th          day of       November, 2006
And is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security
Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's
Fixed/Adjustable Rate Note (the "Note") to
SouthStar Funding, LLC
("Lender") of the same date and covering the property described in the Security Instrument located at:

2446 Ridgelake Drive
Villa Rica, GA 30180

[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME
AND THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the security Instrument,
Borrower and Lender further covenant and agree as follows:

A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
   The Note provides for an initial interest rate of   9.800%   %. The Note provides for changes in the interest
rate and the monthly payments, as follows:

4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES
   (A) Change Dates
   The interest rate I will pay may change on     December 01, 2008       and on that day every six
months thereafter. Each date on which my interest rate could change is called a "Change Date."
   (B) The Index
   Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of
interbank offered rates for 6 month U.S. dollar-denominated deposits in the London market ("LIBOR"), as
published in The Wall Street Journal. The most recent Index figure available as of the date forty-five (45) days
before each Change Date is called the "Current Index."
   If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable
information. The Note Holder will give me notice of this choice.
   (C) Calculation of Changes
   Before each Change Date, the Note Holder will calculate my new interest rate by adding
Six and 200/1000's         Percentage point(s) (     6.200     %) to the Current Index. The Note
Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%).
Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next
Change Date.

Loan No.: ▓▓▓▓▓▓
One Month Adjustable Rate Rider                    Page 1 of 2                    *LNR1056*

EXHIBIT 2

BK      PG

2597  0327

(i) Interest-Only Period. The "interest-only period" is the period from the date of this Note through   December 01, 2011                . For the interest-only period, after calculating my new interest rate is provided above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to pay the interest which accrues on the unpaid principal of my loan. The result of this calculation will be the new amount of my monthly payment.

(ii) Amortization Period. The "amortization period" is the period after the interest-only period. For the amortization period, after calculating my new interest rate is provided above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes
The interest rate I am required to pay at the first Change Date will not be greater than      12.800      % or less than  9.800      %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One and 0/100's                percentage points (    1.000      %) from the rate of interest I have been paying for the preceding     6     months. My interest rate will never be greater than 15.800 %. My interest rate will never be less than  9.800   %.
(E)Effective Date of Changes
My new interest rate will become effective on each Change Date.  I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date  until the amount of my monthly payment changes again.
(F)Notice of Changes
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate rider.

_____(Seal)          _____(Seal)
Chudney Oliver              Borrower          Marcus Armour Oliver          Borrower

_____(Seal)          _____(Seal)
                        Borrower                                  Borrower

_____(Seal)          _____(Seal)
                        Borrower                                  Borrower

Loan No.:

EXHIBIT 2

2597 0328

## PREPAYMENT PENALTY RIDER

This Prepayment Penalty Rider ("Rider") is made this 8th day of November, 2006 by the undersigned Borrower(s)("Borrower") in favor of SouthStar Funding, LLC ("Lender").

Whereas, Borrower simultaneously herewith executed and delivered a mortgage, deed of trust, or security deed (the "Security Instrument") to Lender of even date herewith; and

Whereas, Borrower and Lender wish to revise the Security Instrument to provide for a prepayment penalty.

In consideration for the granting of the loan secured by the Security Instrument, Borrower agrees as follows:

I/We have the right to make payments of principal at any time before they are due. A prepayment of all of the unpaid principal balance is known as a "Full Prepayment." A prepayment of only part of the unpaid principal is known as a "Partial Prepayment." When I/we make a prepayment, I/we will tell the Note Holder in writing that I/we am/are doing so. If, within the first 12 months following the date of the Note and the Security Instrument I/we make a Full Prepayment or Partial  Prepayment(s), I/we will at the same time pay to the Note Holder a prepayment charge.

The prepayment charge will be equal to 1 % of any amount prepaid on the amount of any prepayment that when added to all other amounts prepaid during the twelve (12) month period preceding the date of any prepayment, exceeds twenty percent (20%) of the original principal amount of the Note.

2.The Security instrument is not modified except as amended by this Rider.  All terms and conditions of the Security Instrument not in conflict with this Rider shall remain in full force and effect. To the extent that the provisions of this Rider are inconsistent with the provisions of the Security Instrument, the provisions of the Rider shall prevail over and shall supersede any such inconsistent provisions of the Security Instrument.

By signing below, Borrower accepts and agrees to the terms and covenants contained in this Rider.

**IN WITNESS WHEREOF**, the Borrower(s) has/have executed under Seal this Rider on this _____ 8th day of November, 2006_____.

_____ (SEAL)
Chudney Oliver

_____ (SEAL)
Marcus Armour Oliver

_____ (SEAL)

_____ (SEAL)

*[Sign Original Only]*

**Prepayment Penalty Rider to be recorded with Security Instrument.**

EXHIBIT 2

BK        PG
2597  0329

## EXHIBIT A

All that tract or parcel of land lying and being in Land Lot 178 of the 2nd District, 5th Section Douglas County, Georgia, being Lot 130, Unit Two of Stillwater at Mirrow Lake Subdivision, as per plat thereof recorded in Plat Book 24, page 278, Douglas County, Georgia Records, which recorded plat is incorporated herein by reference and made a part of this description.

2446 Ridge Lake Drive, Villa Rica, GA, 30180
Legal Description

EXHIBIT 2

BK PG
2597 0330

# WAIVER OF BORROWER'S RIGHTS RIDER

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES
THE RIGHT TO ACCELERATE THE DEBT AND THE POWER OF ATTORNEY GIVEN
HEREIN TO LENDER TO SELL THE PREMISE(S) BY NONJUDICIAL FORECLOSURE UPON
DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY
NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE
PROVISIONS HEREOF; (2) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY
HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF
THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE
SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND
TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR
REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY
REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS
READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND ANY AND ALL
QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS
HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED
AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO
EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID
RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND
WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND
(5) AGRESS THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A
PART OF THE SECURITY DEED.

READ AND AGREED BY GRANTOR THIS   8th      DAY OF November      , 2006

Signed, Sealed and delivered in the presence of:

_Chudney Oliver_ (signature)                                           -Grantor
                                                                        (Seal)
Chudney Oliver

_Marcus Armour Oliver_ (signature)                                      -Grantor
                                                                        (Seal)
Marcus Armour Oliver

                                                                        -Grantor
                                                                        (Seal)

Notary Public

**NOTICE TO CLOSING AGENT: THIS
DOCUMENT MUST BE RECORDED
ALONG WITH SECURITY INSTRUMENT
AND RIDERS**

                                                                        -Grantor
                                                                        (Seal)

SSF1038

EXHIBIT 2

GEORGIA -
GRANTOR: Chudney Oliver
              Marcus Armour Oliver
LENDER: SouthStar Funding, LLC

DATE OF SECURITY DEED: November 08, 2006

## WAIVER OF BORROWER'S RIGHTS

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE **RIGHT TO ACCELERATE** THE DEBT AND THE **POWER OF ATTORNEY** GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF; (2) **WAIVES** ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

READ AND AGREED BY GRANTOR:

Signed, Sealed and delivered in the presence of:

_____     _____ (Seal)
                                      Chudney Oliver                -Grantor

_____     _____ (Seal)
                                      Marcus Armour Oliver          -Grantor

_____
              Notary Public           _____ (Seal)
                                                                    -Grantor

                                      _____ (Seal)
                                                                    -Grantor

## CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who, having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of the Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with and explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn to and subscribed before me on the date set forth above.

_____     _____
              Notary Public                          Closing Attorney

## FORECLOSURE CLOSING DISCLOSURE

O.C.G.A. Section 7-1-1014(3) requires that we inform you that if you fail to meet any condition or term of the documents that you sign in connection with obtaining a mortgage loan you may lose the property that serves as collateral for the mortgage loan through foreclosure.

_____     _____
Chudney Oliver                        Marcus Armour Oliver

                                      **RECORDED**

                                      AUG 3 2007

                                      Cindy W. Chaffin, Clerk
                                      Superior & State Court
                                      Douglas County, GA

EXHIBIT 2

```
Doc ID:   010448020002 Type: Assn
Recorded: 10/31/2016 at 09:30:00 AM
Fee Amt: $7.00 Page 1 of 2
Douglas County Georgia
TAMMY M HOWARD Clerk Superior Court
BK 3434 PG 465-466
```

Recording Requested By: ( ALDRIDGE PITE, LLP
When Recorded Return To        Attn: R. Lindsey - Foreclosure Dept.
Atlanta, GA 30305

Fifteen Piedmont Center
3575 Piedmont Rd., N.E., Suite 500

### CORPORATE ASSIGNMENT OF SECURITY DEED

Douglas, Georgia

Date of Assignment: September 19th, 2016
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), SOLELY AS NOMINEE FOR SOUTHSTAR FUNDING, LLC, ITS SUCCESSORS AND/OR ASSIGNS at PO BOX 2026 FLINT MI 48501, 1901 E VOORHEES ST, STE C, DANVILLE, IL 61834
Assignee: U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR RESIDENTIAL ASSET SECURITIES CORPORATION, HOME EQUITY MORTGAGE ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2007-KS2 at C/O OCWEN LOAN SERVICING, LLC., 1661 WORTHINGTON ROAD, STE 100, WEST PALM BEACH, FL 33409

Executed By: CHUDNEY OLIVER, MARCUS ARMOUR OLIVER JOINT TENANTS  To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), SOLELY AS NOMINEE FOR SOUTHSTAR FUNDING, LLC, ITS SUCCESSORS AND/OR ASSIGNS
Date of Security Deed: 11/08/2006 Recorded: 07/25/2007 in Book/Reel/Liber: 2597 Page/Folio: 309 as Instrument No.: N/A  In the County of Douglas, State of Georgia.

Property Address: 2446 RIDGELAKE DRIVE, VILLA RICA, GA  30180

Legal:  na.

THE PURPOSE OF THIS CORRECTIVE ASSIGNMENT OF SECURITY DEED IS TO CORRECT THE ASSIGNEE ON THE ASSIGNMENT RECORDED ON 10/9/2012 IN BOOK 3060 AT PAGE 93

   KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Security Deed having an original principal sum of $211,200.00 with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the Security Deed.

   TO HAVE AND TO HOLD the said Security Deed, and the said property unto the said Assignee forever, subject to the terms contained in said Security Deed.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), SOLELY AS NOMINEE FOR SOUTHSTAR FUNDING, LLC, ITS SUCCESSORS AND/OR ASSIGNS
On SEP 2 0 2016

By: _____        By: _____
    Linda Atkinson                      Rei-i Vernitsky
    Assistant Secretary                  Assistant Secretary

THE FOLLOWING PERSONS HAVE WITNESSED THE EXECUTION OF THIS DOCUMENT:

WITNESS

_____
Teresa L. Shaw

NOTARY WITNESS

CORPORATE ASSIGNMENT OF SECURITY DEED Page 2 of 2

STATE OF  Pennsylvania
COUNTY OF Montgomery

Subscribed and sworn to (or affirmed) before me on _____ SEP 2 0 2016 _____, by _____ Linda Atkinson _____,Assistant

Secretary,  and by _____ Pei-I Vernitsky _____, Assistant Secretary & MORTGAGE ELECTRONIC REGISTRATION

SYSTEMS, INC. ("MERS"), SOLELY AS NOMINEE FOR SOUTHSTAR FUNDING, LLC, ITS SUCCESSORS AND/OR

ASSIGNS, personally known to me, proved to me on the basis of satisfactory evidence to be the person(s) who appeared

before me.

WITNESS my hand and official seal,

_____ Mildred Mitchell _____
Notary Expires 05 04 2020

```
COMMONWEALTH OF PENNSYLVANIA
          NOTARIAL SEAL
    Mildred Mitchell, Notary Public
  Upper Dublin Twp., Montgomery County
   My Commission Expires May 4, 2020
```

(This area for notarial seal)

SCANNED

NOV 1 0 2016

Tammy M. Howard
Clerk Superior Court
Douglas County, GA

Doc ID: ~~~~~~~~ ~~~~~~ at 11:~~~~~
Recorded: 10/09/2012 at 11:~~~~~
Fee Amt: $7.00 Page 1 of 1
Douglas County Georgia
RHONDA G PAYNE Clerk Superior Court
BK **3060** PG **93**

## Assignment of Security Deed

Dated: **October 3, 2012**

For value received, **Mortgage Electronic Registration Systems, Inc., as nominee for SouthStar Funding, L.L.C., its successors and assigns**, P.O. Box 2026, Flint, MI 48501-2026, the undersigned hereby grants, assigns and transfers to **US Bank National Association as Trustee for RASC 2007-KS2** , **In C/O GMAC Mortgage, LLC, 1100 Virginia Drive, Fort Washington, PA 19034**, all beneficial interest under a certain Security Deed dated **November 8, 2006** executed by **CHUDNEY OLIVER AND MARCUS ARMOUR OLIVER** and recorded in Book 2597 on Page(s) 309 as Document Number XX on July 25, 2007 of the official records of the Clerk of Superior Court of Douglas County, Georgia.

MORTGAGE AMOUNT: **$211,200.00**

**WITNESSES:**

Witness 1: Kia Vang

Witness 2: Donna Kurzhal

Mortgage Electronic Registration Systems, Inc., as nominee for SouthStar Funding, L.L.C., its successors and assigns

By: *Ramona Rae Yaritz*

**Ramona Rae Yaritz, Assistant Secretary**

By: *[signature]*

**Lisa Marie Spurbeck, Assistant Vice President**
No Corporate Seal

STATE OF **Minnesota**                  )
COUNTY  **Ramsey**                        ) SS

On **October 3, 2012** before me, **Sandra Jean Kinnunen** , **Notary Public** in and for said State personally appeared **Ramona Rae Yaritz** , **Assistant Secretary** and **Lisa Marie Spurbeck** , **Assistant Vice President** of Mortgage Electronic Registration Systems, Inc., personally known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that s/he executed the same in his/her authorized capacity, and that by his/her signature on the instrument the entity upon behalf of which the person acted, executed the instrument. WITNESS my hand and official seal.

Prepared By:
Dana Schroeder-Davis
2925 Country Drive
St. Paul, MN 55117

**Sandra Jean Kinnunen, Notary Public**
My Commission expires: **January 31, 2016**

**RECORDED**

OCT 29 2012

Rhonda G. Payne
Clerk Superior Court
Douglas County, GA

SANDRA JEAN KINNUNEN
Notary Public-Minnesota
My Commission Expires Jan 31, 2016

When Recorded Return To:
Indecomm Global Services
2925 Country Drive
St. Paul, MN 55117



Date:   7/6/2010                          Loan# 

Borrower's Name:   CHUDNEY OLIVER  MARCUS ARMOUR OLIVER

Lender's Name and Address:   GMAC Mortgage, LLC
                             3451 Hammond Avenue
                             Waterloo, IA  50702

## IMPORTANT INFORMATION ABOUT YOUR
## LOAN MODIFICATION THAT FEATURES A DEFERRED PAYMENT
*Please Read Carefully*

This disclosure describes the features of your loan modification.

How Is Your Interest Rate and Initial Payment Determined?

- According to your mortgage payment calculated for long-term affordability, your modified loan will now be a balloon mortgage.
- The amount of the initial monthly payment on your modified loan will be based on three factors:
     (1) the interest rate reflected in the agreement;
     (2) the new modified principal balance on the loan; and
     (3) the remaining term \ amortization period of the loan.

   Your new monthly payment of principal and interest will be calculated based on a remaining Term of 316 months.  Although your new payment will pay down your non-deferred loan balance, a balloon payment for the entire amount of your remaining unpaid principal balance including your "Deferred Principal Balance" will be due when the Term of your loan expires or when you pay off the modified loan, which will be when you sell or transfer an interest in your house, refinance the loan, or when the last scheduled payment is due, and the Lender will be under no obligation to refinance your loan.

How Your Monthly Payment Can Change- Balloon Payment

   You will be notified in writing at least 90 but not more than 120 days before the date the deferred principal payment is due.  This notice will be mailed to you at the most current mailing address you supply and will contain information about the amount of the balloon payment, the date it is due and the telephone number of the Lender's representative (or loan servicer's representative) available to answer questions you may have about the notice.

THE TERM OF THE LOAN IS 316 MONTHS. YOU WILL BE REQUIRED TO PAY THE ENTIRE REMAINING UNPAID PRINCIPAL BALANCE, INCLUDING THE DEFERRED PRINCIPAL, AND ACCRUED INTEREST OWING WHEN THE TERM

*/*

OF YOUR LOAN EXPIRES, OR WHEN YOU PAY OFF THE MODIFIED LOAN, WHICH WILL BE WHEN YOU SELL OR TRANSFER AN INTEREST IN YOUR HOUSE, REFINANCE THE LOAN, OR WHEN THE LAST SCHEDULED PAYMENT IS DUE.

THE LENDER HAS NO OBLIGATION TO REFINANCE THIS LOAN AT THE END OF ITS TERM.  THEREFORE, YOU MAY BE REQUIRED TO REPAY THE LOAN OUT OF ASSETS YOU OWN OR YOU MAY HAVE TO FIND ANOTHER LENDER WILLING TO REFINANCE THE LOAN.

ASSUMING THIS LENDER OR ANOTHER LENDER REFINANCES THE LOAN AT MATURITY, YOU WILL PROBABLY BE CHARGED INTEREST AT MARKET RATES PREVAILING AT THAT TIME AND SUCH RATES MAY BE HIGHER THAN THE INTEREST RATE PAID ON THIS LOAN. YOU MAY ALSO HAVE TO PAY SOME OF ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW MORTGAGE LOAN.

Example of Balloon Payment

- The payment amount due at loan maturity can change substantially based upon amount of the loan, interest rate, and any principal payments you choose to make before loan maturity, among other factors.

| | |
|---|---|
| Unpaid Loan Balance at Time of Modification | $100,000 |
| Loan Balance That Does Not Accrue Interest (Deferred Amt.) | $25,000 |
| Loan Balance That Does Accrue Interest | $75,000 |
| Interest Rate | 7.7500% |
| Deferred Principal Balance Due at Maturity | $ 25,000.00 |

In the example above, the outstanding deferred balance of $25,000.00 would be due and payable at maturity.

This summary is intended for reference purposes only. Important information relating specifically to your loan modification will be contained in the loan modification documents, which alone will establish your rights and obligations under the loan modification plan.  This disclosure does not address any other payments that may be required under the terms of your loan, for example, monthly escrow payments

THE PURPOSE OF THIS DISCLOSURE IS TO PROVIDE VARIOUS DETAILS ON THE TYPE OF LOAN MODIFICATION FOR WHICH YOU HAVE EXPRESSED INTEREST.  THE DISCLOSURE DOES NOT CONSTITUTE A COMMITMENT ON THE PART OF THE LENDER TO MODIFY YOUR LOAN.

Receipt of a copy of this Disclosure is hereby acknowledged.

7/26/10
_____
Date

7/26-2010
_____
Date

_____
Date

_____
Date

CHUDNEY OLIVER
_____

MARCUS ARMOUR OLIVER
_____

_____

7/6/2010                                          **GMAC** Mortgage

CHUDNEY OLIVER
MARCUS ARMOUR OLIVER
2446 RIDGELAKE DR
VILLA RICA GA 30180-0000

Re:    Account Number        ████████████
       Property              2446 RIDGELAKE DRIVE
                             VILLA RICA GA 30180

Dear CHUDNEY OLIVER  MARCUS ARMOUR OLIVER

**Congratulations!  Your request for a loan modification has been approved subject to the following:**
       -Receipt of your contribution in the form of certified funds
       -Receipt of the executed loan modification agreement and any attachments
       -Receipt of clear title, if applicable

Highlights of the enclosed Loan Modification Agreement and instructions for completing and returning it
are as follows:

- The contribution amount of $ 1,353.29 in the form of certified funds is due in our office by August 1, 2010.
- The interest rate is 4.87500%.
- This modification incorporates a principal deferment of $71,350.00 that will result in a principal payment that will be due when the term of your loan expires December 1, 2036 ( Maturity Date ).
- This modification incorporates a principal forgiveness of $0.00 and interest forgiveness of $30,463.83 by which your unpaid principal balance will be reduced.  **This may result a tax consequence to you and we encourage you to contact a tax professional to discuss any questions you may have.**
- The first modified payment begins September 1, 2010.
    Principal and Interest       842.85
    Escrow                       $510.30
    **Total Payment**            **$1,353.15**
- All of the documents must be executed and the signatures must be exactly as the names are typed.
- The signed Loan Modification Agreement should be returned using the enclosed pre-paid overnight envelope.
- If any modification closing costs are more than projected, the difference will be assessed to the account.
- All miscellaneous fees and costs – excluding late charges -- may not have been included in the loan modification and will remain outstanding.

| We are NOT required to record the modification document; therefore, only your signature(s) are required.  No notary is required. |
| --- |



The contribution and executed loan modification documents are due back by August 1, 2010.  Please return to:

GMAC Mortgage, LLC
3700 J Street SW
Suite 222
Cedar Rapids, IA 52404

IMPORTANT!  The loan modification will not be complete until we receive all properly executed documents and the contribution amount.  If the modification is not completed we will continue to enforce our lien.  If the conditions outlined above are not satisfied the modification will be withdrawn.

If you have any questions regarding this modification offer, please contact a modification specialist directly at 1-800-850-4622  Monday – Thursday 8:00 AM to 7:00 PM, Friday 8:00 AM to 5:00 PM, Central Time.

Loan Modification Specialist
Enclosures

Notice:  Federal law requires that we advise you that this notice is from a debt collector attempting to collect on a debt and any information obtained will be used for that purpose only.

If you are currently involved in a bankruptcy proceeding or have been discharged of your personal liability for the repayment of this debt, this notice is being provided for informational purposes only, it is not an attempt to hold you personally responsible for the debt and any rights we may chose to pursue will be exercised against the property only.

Record & Return To:
GMAC Mortgage, LLC
Attention:  Loss Mitigation
3451 Hammond Avenue
Waterloo, IA 50702
Investor Number ███████
Custodian ID:  W1

————————————————————[Space Above This Line For Recorder's Use]————————————————————

# NON-HAMP LOAN MODIFICATION AGREEMENT
## (Balloon Disclosure Attached)

Loan Modification Agreement ("Agreement") made this August 1, 2010 ("Effective Date") between CHUDNEY OLIVER    MARCUS ARMOUR OLIVER              ("Borrower") and GMAC Mortgage, LLC, the agent for Lender/Servicer, Mortgage Electronic Registration Systems, Inc. (Mortgagee) amends and supplements (1) the Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument"), dated November 8, 2006 and granted or assigned to Mortgage Electronic Registration Systems, Inc. as mortgagee of record (solely as nominee for Lender and Lender's successors and assigns), P. O. Box 2026, Flint, Michigan 48501-2026, (888)-679-MERS and if applicable, recorded on  with Instrument Number  in Book  and/or Page Number  of the real property records of  CARROLL County, GA and (2) that certain promissory note ("Note") dated November 8, 2006 in the original principal sum of  Two Hundred Eleven Thousand Two Hundred  Dollars and No Cents ($  211,200.00) executed by Borrower.    Said Security Instrument covers the real and personal property described in such Security Instrument (the "Property") located at 2446 RIDGELAKE DRIVE    VILLA RICA GA 30180, which real property is more particularly described as follows:

( Legal Description if Applicable for Recording Only )

Borrower acknowledges that "Lender" is the legal holder and the owner, or agent\servicer for the legal holder and owner, of the Note and Security Instrument and further acknowledges that if "Lender" transfers the Note, as amended by this Agreement, the transferee shall be the "Lender" as defined in this Agreement.

Borrower has requested, and Lender has agreed, to extend or rearrange the time and manner of payment of the Note and to extend and carry forward the lien(s) on the Property whether or not created by the Security Instrument.

Now, therefore, in consideration of the mutual promises and agreements contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.  Borrower acknowledges that as of the Effective Date, the amount payable under the Note and Security Instrument (New Principal Balance) is $149,852.73.  This represents a reduction in

my old principal balance (the balance due prior to the date of this loan modification) by $71,350.00 (Total Deferred + Forgiven Principal) of which $0.00 is being forgiven in full and $71,350.00 is being deferred (the "Deferred Principal Balance") until the Term of my loan expires (the Maturity Date), or when I payoff my loan at the time when I sell or transfer any interest in my home, refinance the loan, or when the last scheduled payment is due, and the Lender will be under no obligation to refinance my loan.  Until I am required to payoff the Deferred Principal Balance, I will not be required to pay interest or make monthly payments on the deferred amount.

2.      The Maturity Date is December 1, 2036.

3.      Borrower hereby renews and extends such indebtedness and promises to pay jointly and severally to the order of Lender the Principal Balance, consisting of the amount(s) loaned to Borrower by Lender and any accrued but unpaid interest capitalized to date as applicable, along with any other amounts that may come due under the terms of the original Note and Security Instrument

4.      Interest will be charged on the unpaid, non-deferred, 'New Principal Balance" until the non-deferred principal has been paid in full.  Borrower promises to pay interest at the rate of 4.87500% from August 1, 2010  until I payoff my loan at the time when I sell or transfer any interest in my home, refinance the loan, or when the last scheduled payment is due.  If Step Rate: The rate of interest I pay will change based upon Payment Schedule below.

5.      Borrower promises to make monthly principal and interest payments of $842.85, beginning on September 1, 2010, and continuing thereafter on the same day of each succeeding month, until all principal and interest is paid in full.

6.      If on December 1, 2036 (the "Maturity Date"), Borrower still owes any amounts under the Note and Security Instrument, including any "Deferred Principal Balance " as provided for in this Agreement, Borrower will pay these amounts in full on that date. Borrower will make such payments at 3451 Hammond Avenue, Waterloo, Iowa, 50702 or at such other place as Lender may require. The amounts indicated in this paragraph do not include any required escrow payments for items such as hazard insurance or property taxes; if such escrow payments are required the monthly payments will be higher and may change as the amounts required for escrow items change.

7.      If "Lender" has not received the full amount of any monthly payment within the grace period provided for in the original Note or as otherwise provided for by law, Borrower will pay a late payment fee to "Lender" in an amount calculated based on the late charge percentage provided for in the original Note, or as otherwise provided for by law, and the monthly payment required under this Agreement, with a maximum as provided for in the Note, or otherwise provided by law. Borrower will pay this late charge promptly but only once on each late payment. The late charge is not in lieu of any other remedy of Lender, including any default remedy.

8.      It is the intention of the parties that all liens and security interests described in the Security Instrument are hereby renewed and extended (if the Maturity Date of the original Note has been changed) until the indebtedness evidenced by the Note and this Agreement has been fully paid. Lender and Borrower acknowledge and agree that such renewal, amendment, modification, rearrangement or extension (if applicable) shall in no manner affect or impair the Note or liens and security interests securing same, the purpose of this Agreement being

simply to modify, amend rearrange or extend (if applicable) the time and the manner of payment of the Note and indebtedness evidenced thereby, and to carry forward all liens and security interests securing the Note, which are expressly acknowledged by Borrower to be valid and subsisting, and in full force and effect so as to fully secure the payment of the Note.

9.     If all or any part of the Property or any interest in it is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law. If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower. For purposes of this paragraph, "interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is transfer of title by Borrower at a future date to a purchaser.

10.    As amended hereby, the provisions of the Note and Security Instrument shall continue in full force and effect, and the Borrower acknowledges and reaffirms Borrower's liability to Lender thereunder. In the event of any inconsistency between this Agreement and the terms of the Note and Security Instrument, this Agreement shall govern. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement, including but not limited to, in the case of the Borrower, the obligation to pay items such as taxes, insurance premiums or escrow items, as applicable. Any default by Borrower in the performance of its obligations herein contained shall constitute a default under the Note and Security Instrument, and shall allow Lender to exercise all of its remedies set forth in said Security Instrument.

11.    Lender does not, by its execution of this Agreement, waive any rights it may have against any person not a party hereto. This Agreement may be executed in multiple counterparts, each of which shall constitute an original instrument, but all of which shall constitute one and the same Agreement.

EACH OF THE BORROWER AND THE LENDER ACKNOWLEDGE THAT NO REPRESENTATIONS, AGREEMENTS OR PROMISES WERE MADE BY THE OTHER PARTY OR ANY OF ITS REPRESENTATIVES OTHER THAN THOSE REPRESENTATIONS, AGREEMENTS OR PROMISES SPECIFICALLY CONTAINED HEREIN. THIS AGREEMENT, AND THE NOTE AND SECURITY INSTRUMENT (AS AMENDED HEREBY) SETS FORTH THE ENTIRE UNDERSTANDING BETWEEN THE PARTIES. THERE ARE NO UNWRITTEN AGREEMENTS BETWEEN THE PARTIES.

Executed effective as of the day and year first above written.

7/26/10 _____    _____
Date          CHUDNEY OLIVER                  Witness

                                             _____
                                             Print

7/26/10 _____    _____
Date          MARCUS ARMOUR OLIVER            Witness

                                             _____
                                             Print

7/30/10 _____    _____
Date                                         Witness
                                             Shirley Williams
                                             _____
                                             Print

_____            _____
Date                                         Witness

                                             _____
                                             Print

GMAC Mortgage, LLC

By: _____
    Limited Signing Officer
Date: _____
                   Limited Signing Officer

March 31, 2010

**GMAC** Mortgage



CHUDNEY OLIVER
MARCUS ARMOUR OLIVER
2446 RIDGELAKE DR
VILLA RICA GA 30180-0000

Re: Account Number 
2446 RIDGELAKE DRIVE
VILLA RICA GA 30180

Dear CHUDNEY OLIVER  MARCUS ARMOUR OLIVER

**Congratulations!  Your request for a loan modification has been approved subject to the following:**
-Receipt of your contribution in the form of certified funds
-Receipt of the signed loan modification agreement and any attachments
-Receipt of clear title, if applicable

Highlights of the enclosed Loan Modification Agreement and instructions for completing and returning it are as follows:

- The contribution amount of  $ 1,353.29 in the form of certified funds, is due in our office by May 1, 2010.
- The interest rate is  4.82500%.
- The first modified payment begins June 1, 2010.

| | |
|---|---|
| Principal and Interest | $ 862.33 |
| Escrow | $ 488.73 |
| **Total Payment** | **$1,351.06** |

All of the documents must be executed and the signatures must be exactly as the names are typed.
- The signed Loan Modification Agreement should be returned using the enclosed pre-paid overnight envelope.
- If any modification closing costs are more than projected, the difference will be assessed to the account.
- All miscellaneous fees and costs – excluding late charges – may not have been included in the loan modification and will remain outstanding.

> We are NOT required to record the modification document; therefore, only your signature(s) are required.  No notary is required.

The contribution and executed loan modification documents are due back by May 1, 2010.  Please return to:

GMAC Mortgage, LLC
3700 J Street SW
Suite 222
Cedar Rapids, IA 52404

IMPORTANT!  The loan modification will not be complete until we receive all properly executed documents and the contribution amount.  If the modification is not completed we will continue to enforce our lien.  If the conditions outlined above are not satisfied the modification will be withdrawn.

**If the conditions outlined above are not satisfied, the modification will be withdrawn.**

If you have any questions regarding this modification offer, please contact a modification specialist directly at 1-800-850-4622 Monday – Thursday 8:00 AM to 7:00 PM, Friday 8:00 AM to 5:00 PM, Central Time.

Loan Modification Specialist
Enclosures

**GMAC FSPF2 03-31-2010 master mail merge Record N 9.doc**

Record & Return To:
GMAC Mortgage, LLC
Attention: Loss Mitigation
3451 Hammond Avenue
Waterloo, IA 50702
Custodian ID: W1

─────────────────────────[Space Above This Line For Recorder's Use]─────────────────────────

# STEP RATE LOAN MODIFICATION AGREEMENT
## WITH PRINCIPLE DEFERMENT
### (Deferred Payment Disclosure Attached)

Loan Modification Agreement ("Agreement") made this May 1, 2010 ("Effective Date") between CHUDNEY OLIVER    MARCUS ARMOUR OLIVER    ("Borrower") and GMAC Mortgage, LLC ("Lender"), amends and supplements that certain promissory note ("Note") dated November 8, 2006 in the original principal sum of  Two Hundred Eleven Thousand Two Hundred Dollars and No Cents ($ 211,200.00)executed by Borrower.  The Note is secured by a Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument"), dated the same date as the Note, and if applicable, recorded on  with Instrument Number  in Book  and/or Page Number  of the real property records of  CARROLL County, GA.  Said Security Instrument covers the real and personal property described in such Security Instrument (the "Property") located at 2446 RIDGELAKE DRIVE    VILLA RICA GA 30180, which real property is more particularly described as follows:

### ( Legal Description if Applicable for Recording Only )

Borrower acknowledges that Lender is the legal holder and the owner, or agent\servicer for the legal holder and owner, of the Note and Security Instrument and further acknowledges that if Lender transfers the Note, as amended by this Agreement, the transferee shall be the "Lender" as defined in this Agreement.

Borrower has requested, and Lender has agreed, to extend or rearrange the time and manner of payment of the Note and to extend and carry forward the lien(s) on the Property whether or not created by the Security Instrument.

Now, therefore, in consideration of the mutual promises and agreements contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. Borrower acknowledges that as of the Effective Date, the amount payable under the Note and Security Instrument (New Principal Balance) is $154,841.91 and $66,360.82 of my old principal balance (the balance due prior to the date of this loan modification) shall be deferred (the "Deferred Principal Balance") until the Term of my loan expires (the Maturity Date ), or when I payoff my loan at the time when I sell or transfer any interest in my home, refinance the loan, or when the last scheduled payment is due, and the Lender will be under no obligation to refinance my loan.  Until I am required to payoff the "Deferred Principal Balance", I will not be required to pay interest or make monthly payments on the deferred amount.

2. Borrower hereby renews and extends such indebtedness and promises to pay jointly and severally to the order of "Lender" the Principal Balance, consisting of the amount(s) loaned to Borrower by "Lender" and any accrued but unpaid interest capitalized to date as applicable, along with any other amounts that may come due under the terms of the original Note and Security Instrument.

**GMAC FSPF2 03-31-2010 master mail merge Record N 9.doc**

3. PAYMENT SCHEDULE.

    a.  Beginning on June 1, 2010 and continuing thereafter on the same day of each succeeding month during Year 1, based on an interest rate of 4.82500%, borrower promises to make monthly principal and interest payments of $862.33.

    b.  Beginning on June 1, 2014, and continuing thereafter on the same day of each succeeding month for the remaining Term or until the non-deferred principal balance and accrued interest are paid-in-full, based on an interest rate of 5.00000%, borrower promises to make monthly principal and interest payments of $876.40.

The amounts indicated in this paragraph do not include any required escrow payments for items such as hazard insurance or property taxes; if such escrow payments are required the monthly payments will be higher and may change as the amounts required for escrow items change.

| Interest Rate | From | To: | P & I Payment |
|---|---|---|---|
| 4.82500% | May 1, 2010 | May 1, 2014 | $862.33 |
| 5.00000% | May 1, 2014 | December 1, 2036 | $876.40 |

NOTE: If borrower pays an amount in excess of the scheduled monthly principal and interest payment, that amount will serve to reduce both the non-deferred principal balance and the remaining Term of the loan, but will not cause any of the scheduled principal and interest payments to be re-calculated.

4. If "Lender" has not received the full amount of any monthly payment within the grace period provided for in the original Note or as otherwise provided for by law, Borrower will pay a late payment fee to "Lender" in an amount calculated based on the late charge percentage provided for in the original Note, or as otherwise provided for by law, and the monthly payment required under this Agreement, with a maximum as provided for in the Note, or otherwise provided by law. Borrower will pay this late charge promptly but only once on each late payment. The late charge is not in lieu of any other remedy of Lender, including any default remedy.

5. If on December 1, 2036 (the "Maturity Date"), Borrower still owes any amounts under the Note and Security Instrument, including the "Deferred Principal Balance " as provided for in this Agreement, Borrower will pay these amounts in full on that date. Borrower will make such payments at 3451 Hammond Avenue Waterloo, IA 50702 or at such other place as Lender may require.

6. It is the intention of the parties that all liens and security interests described in the Security Instrument are hereby renewed and extended (if the Maturity Date of the original Note has been changed) until the indebtedness evidenced by the Note and this Agreement has been fully paid. Lender and Borrower acknowledge and agree that such renewal, amendment, modification, rearrangement or extension (if applicable) shall in no manner affect or impair the Note or liens and security interests securing same, the purpose of this Agreement being simply to modify, amend rearrange or extend (if applicable) the time and the manner of payment of the Note and indebtedness evidenced thereby, and to carry forward all liens and security interests securing the Note, which are expressly acknowledged by Borrower to be valid and subsisting, and in full force and effect so as to fully secure the payment of the Note.

7. If all or any part of the Property or any interest in it is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law. If "Lender" exercises this option, "Lender" shall give Borrower any and all notice(s) that may be required by law before accelerating the debt after which, Lender shall

give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower. For purposes of this paragraph, "interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is transfer of title by Borrower at a future date to a purchaser.

8. As amended hereby, the provisions of the Note and Security Instrument shall continue in full force and effect, and the Borrower acknowledges and reaffirms Borrower's liability to Lender thereunder. In the event of any inconsistency between this Agreement and the terms of the Note and Security Instrument, this Agreement shall govern. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement, including but not limited to, in the case of the Borrower, the obligation to pay items such as taxes, insurance premiums or escrow items, as applicable. Any default by Borrower in the performance of its obligations herein contained shall constitute a default under the Note and Security Instrument, and shall allow Lender to exercise all of its remedies set forth in said Security Instrument.

9. Lender does not, by its execution of this Agreement, waive any rights it may have against any person not a party hereto. This Agreement may be executed in multiple counterparts, each of which shall constitute an original instrument, but all of which shall constitute one and the same Agreement.

EACH OF THE BORROWER AND THE LENDER ACKNOWLEDGE THAT NO REPRESENTATIONS, AGREEMENTS OR PROMISES WERE MADE BY THE OTHER PARTY OR ANY OF ITS REPRESENTATIVES OTHER THAN THOSE REPRESENTATIONS, AGREEMENTS OR PROMISES SPECIFICALLY CONTAINED HEREIN. THIS AGREEMENT, AND THE NOTE AND SECURITY INSTRUMENT (AS AMENDED HEREBY) SETS FORTH THE ENTIRE UNDERSTANDING BETWEEN THE PARTIES. THERE ARE NO UNWRITTEN AGREEMENTS BETWEEN THE PARTIES.

**GMAC FSPF2 03-31-2010 master mail merge Record N 9.doc**

Executed effective as of the day and year first above written.

4-12-2010   *Chudney Oliver*                      *Witness*
Date        CHUDNEY OLIVER                         Witness

                                                   *Shirley Williams*
                                                   Print

4-12-10     *Marcus Armour*                        _____
Date        MARCUS ARMOUR OLIVER                   Witness

                                                   _____
                                                   Print

_____      _____              _____
Date                                               Witness

                                                   _____
                                                   Print

_____      _____              _____
Date                                               Witness

                                                   _____
                                                   Print

GMAC Mortgage, LLC

By: *Kristi M Caya*
    Kristi M. Caya
    Limited Signing Officer
    Limited Signing Officer

Date: _____

**GMAC FSPF2 03-31-2010 master mail merge Record N 9.doc**

Date:    March 31, 2010                                        Loan# ███████

Borrower's Name: CHUDNEY OLIVER MARCUS ARMOUR OLIVER

Lender's Name and Address:    GMAC Mortgage, LLC
                              3451 Hammond Avenue
                              Waterloo, IA 50702

IMPORTANT INFORMATION ABOUT YOUR
LOAN MODIFICATION WHICH FEATURES A DEFERRED PAYMENT
Please Read Carefully

This disclosure describes the features of your loan modification.

How Is Your Interest Rate and Initial Payment Determined?

- According to your mortgage payment calculated for long-term affordability, your modified loan will now provide for a Deferred Payment.
- The amount of the initial monthly payment on your modified loan will be based on three factors:
  - (1) the interest rate reflected in the agreement;
  - (2) the "New Principal Balance" of the loan; and
  - (3) the remaining term and amortization periods of the loan.

Based on a scheduled of interest rate and payment adjustments, your monthly payment of principal and interest will be calculated in order to repay the "non-deferred principal balance" by the end of the Term of your loan. (the Maturity Date)  Although your new scheduled monthly payments will pay down your non-deferred principal balance, a payment for the entire amount of your "Deferred Principal Balance" will be due when the Term of your loan expires or when you pay off the modified loan, which will be when you sell or transfer an interest in your house, refinance the loan, or when the last scheduled payment is due, and the Lender will be under no obligation to refinance your loan.

You will be notified in writing at least 90 but not more than 120 days before the date the deferred **principal** payment is due.  This notice will be mailed to you at the most current mailing address you supply and will contain information about the amount of the deferred principal, the date it is due and the telephone number of the Lender's representative (or loan servicer's representative) available to answer questions you may have about the notice.

AN AMOUNT OF YOUR UNPAID PRINCIPAL BALANCE HAS BEEN DEFRRED. AS A RESULT, YOU WILL BE REQUIRED TO PAY FULL DEFERRED PRINCIPAL BALANCE WHEN THE TERM OF YOUR LOAN EXPIRES (THE MATURITY DATE), OR WHEN YOU PAY OFF THE MODIFIED LOAN, WHICH WILL BE WHEN YOU SELL OR TRANSFER AN INTEREST IN YOUR HOUSE, REFINANCE THE LOAN, OR WHEN THE LAST SCHEDULED PAYMENT IS DUE.

THE LENDER HAS NO OBLIGATION TO REFINANCE THIS LOAN AT THE END OF ITS TERM. THEREFORE, YOU MAY BE REQUIRED TO REPAY THE LOAN OUT OF ASSETS YOU OWN OR YOU MAY HAVE TO FIND ANOTHER LENDER WILLING TO REFINANCE THE LOAN.

ASSUMING THIS LENDER OR ANOTHR LENDER REFINANCES THE LOAN AT MATURITY, YOU WILL PROBABLY BE CHARGED INTEREST AT MARKET RATES PREVAILING AT THAT

TIME AND SUCH RATES MAY BE HIGHER THAN THE INTEREST RATE PAID ON THIS LOAN. YOU MAY ALSO HAVE TO PAY SOME OF ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW MORTGAGE LOAN.

<u>Example of Deferred Payment</u>

- The payment amount due at loan maturity can change substantially based upon amount of the loan, interest rate, and any principal payments you choose to make before loan maturity, among other factors.

| | |
|---|---|
| Modified Loan Balance | $100,000 |
| Modified Balance That Does Not Accrue Interest (Deferred Amt.) | $25,000 |
| Loan Balance That Does Accrue Interest | $75,000 |
| Remaining Loan Term | 20 years |
| Deferred Principal Balance Due at Maturity | $ 25,000.00 |

In the example above, the outstanding deferred loan balance of $25,000.00 would be due and payable at the end of 20 years.

This summary is intended for reference purposes only. Important information relating specifically to your loan modification will be contained in the loan modification documents, which alone will establish your rights and obligations under the loan modification plan. This disclosure does not address any other payments that may be required under the terms of your loan, for example, monthly escrow payments

THE PURPOSE OF THIS DISCLOSURE IS TO PROVIDE VARIOUS DETAILS ON THE TYPE OF LOAN MODIFICATION FOR WHICH YOU HAVE EXPRESSED INTEREST. THE DISCLOSURE DOES NOT CONSTITUTE A COMMITMENT ON THE PART OF THE LENDER TO MODIFY YOUR LOAN.

Receipt of a copy of this Disclosure is hereby acknowledged.

4-11-2010
_____
Date

_____
CHUDNEY OLIVER

4-11-10
_____
Date

_____
MARCUS ARMOUR OLIVER

_____
Date

_____

_____
Date

_____

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

IN RE:

MARCUS ARMOUR OLIVER AND
CHUDNEY WILLIAMS OLIVER,

         Debtors.

Case No. 14-61319-WLH

Chapter 13

**CERTIFICATE OF SERVICE**

    I, the undersigned, hereby certify under penalty of perjury that I am, and at all times hereinafter mentioned, was more than 18 years of age, and that on the January 6, 2017, I served a copy of **Notice of Hearing, Motion for Relief from the Automatic Stay**, **and Declaration in Support of Motion for Relief from Stay** which was filed in this bankruptcy matter on the January 6, 2017, in the manner indicated:

**The following parties have been served via e-mail**:

Richard K. Valldejuli
info@valldejuliandassociates.com

Nancy J. Whaley
ecf@njwtrustee.com

**The following parties have been served via U.S. First Class Mail**:

Marcus Armour Oliver
2446 Ridge Lake Drive
Villa Rica, GA 30180

Chudney Williams Oliver
2446 Ridge Lake Drive
Villa Rica, GA 30180

**I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.**

Dated: January 6, 2017

/s/ *Bryce Noel*

Bryce Noel, Bar No.: 620796
Attorney for Movant
Aldridge Pite, LLP
Fifteen Piedmont Center
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (888) 873-6147
Email: BNoel@aldridgepite.com